O

# United States District Court
# Central District of California

| | |
|---|---|
| I. M., a minor by and through his parents ALEX MARTINEX and MYRNA MARTINEZ<br><br>     Plaintiff,<br><br>  v.<br><br>WEST COVINA UNIFIED SCHOOL DISTRICT; GORDON PFITZER, individually and in his official capacity as an employee; SHERYL LESIKAR, individually and in her official capacity as an employee; DOES 1-20<br><br>     Defendants. | Case № 2:14-cv-06996-ODW(FFMx)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION [20]** |

## I. INTRODUCTION

Last year, while a first grader at Merced Elementary School, I.M. wanted to hand out candy canes at his class Christmas party.[1] Attached to each candy cane was the "Legend of the Candy Cane"— a religious message explaining that Christmas is meant to honor the birth of Jesus Christ. The teacher, principal, and school district determined that the message was religious and therefore could not be distributed during the class Christmas party. This year, I.M. wants to hand out candy canes with

---

[1] The student is a minor and therefore the Court will refer to him by his initials.

the same message, but is concerned that he will again be denied permission. By and through his parents, I.M. filed the instant action and seeks a preliminary injunction forcing the West Covina School District to allow him to distribute candy canes with the message at this year's class Christmas party. For the reasons discussed below, the Court **DENIES** Plaintiff's Motion for a Preliminary Injunction.[2] (ECF No. 20.)

## II.  FACTUAL BACKGROUND

On December 11, 2013, I.M.'s sister, Alexandra Cantu, shared with him the "Legend of the Candy Cane" ("Legend"), which states:

> A candy maker wanted to make a candy that would be a witness, so he made the CHRISTmas Candy Cane to incorporate several symbols for the birth, ministry, and death of Jesus Christ.
>
> He began with a stick of pure white, hard candy. White, to symbolize the Virgin Birth, the sinless nature of Jesus, and hard to symbolize the Solid Rock, the foundation of the church, and firmness of the promises of God.
>
> The candy maker made the candy in the form of a "J" to represent the precious name of Jesus, who came to earth as our savior. It also represents the staff of the "Good Shepherd" with which He reaches down into the ditches of the world to lift out the fallen lambs who, like all sheep, have gone astray.
>
> The candy maker stained it with red stripes. He used the three small stripes to show the stripes of the scourging Jesus received by which we are healed. The large red stripe was for the blood shed by Jesus on the Cross so that we could have the promise of eternal life, if only we put our faith and trust in Him.
>
> Unfortunately, the candy became known as a Candy Cane—a

---

[2] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

|   |   |
|---|---|
| 1 | meaningless decoration seen at Christmas time. But the meaning is still |
| 2 | there for those who "have eyes to see and ears to hear." |
| 3 | I pray that this symbol will again be used to witness to the Wonder |
| 4 | of Jesus and His Great Love that came down at Christmas and remains |
| 5 | the ultimate and dominant force in the universe today. |

(Mot. 2.)

After hearing about the Legend, I.M. told his sister that he wanted to hand out candy canes with the Legend to his classmates to share his belief about Christmas with his friends. (I.M. Decl. ¶ 3.) He and his sister purchased candy canes, construction paper, and ribbon. (*Id*. ¶ 5.) They printed the Legend, fastened it to decorative red paper, and tied it to each candy cane with a ribbon. (*Id*.)

On December 13, 2013, I.M. attempted to hand out the candy canes with the Legend to his classmates. (*Id*. ¶ 6.) He asked his teacher, Valerie Lu, for permission. (*Id*.) She said that she needed to ask the principal, Gordon Pfitzer. (*Id*.)

On December 18, 2013, Lu told I.M. that he could not distribute the candy canes due to the religious content of the Legend. (*Id*. ¶ 7.) I.M. alleges, and Defendants deny, that Lu told I.M. "Jesus is not allowed in school." (*Id*.) She offered to let him distribute the candy canes without the Legend. (*Id*.) I.M. still wanted to hand out candy canes, so Lu removed the Legend. (*Id*.) That evening, I.M. explained what happened to his parents and said that he was afraid he was in trouble for trying to share the Legend with his friends. (*Id*. ¶¶ 8-9.)

On December 19, 2013, I.M. and his sister went to the school to speak with Lu. (Cantu Decl. ¶ 10.) Lu explained that she needed permission from the principal due to the religious content of the Legend. (*Id*.) Lu also explained that students are not allowed to distribute religious messages on school grounds, and based on that policy she could not allow I.M. to distribute candy canes with the Legend in class. (*Id*.) That evening, Alexandra asked I.M. if he wanted to distribute candy canes at his class

1  Christmas party the next day. (I.M. Decl. ¶ 10.) He did, so the two spent the rest of
2  the evening attaching copies of the Legend to candy canes. (*Id*.)

3       On December 20, 2013—the day of the class Christmas party—Alexandra
4  called the principal, Pfitzer, to ask whether I.M. would be permitted to distribute
5  candy canes with the Legend as a gift for the class Christmas party. (Cantu Decl.
6  ¶ 13.) Pfitzer consulted with Sheryl Lesikar at the West Covina School District and
7  reported to Alexandra that the district agreed I.M. should not be allowed to distribute
8  candy canes with the Legend due to the religious content. (*Id*.)

9       While Alexandra was speaking with Pfitzer, I.M. attended the class Christmas
10 party. (*Id*. ¶¶ 13-14.) About 10 minutes before school ended, Pfitzer informed
11 Alexandra that I.M. would be permitted to distribute candy canes with the Legend off
12 school grounds as students exited the campus. (*Id.* ¶ 14.) Alexandra escorted I.M. off
13 campus and waited for his classmates. (*Id*.) I.M. was able to give some classmates
14 candy canes with the Legend, but not all because not all passed by. (I.M. Decl.
15 ¶¶ 13-14.)

16      When I.M. retuned home, he showed his family the gifts that were exchanged
17 during the class Christmas party. (Cantu Decl. ¶ 15.) The school allowed I.M.'s
18 classmates to distribute secular Christmas messages. (*Id*.) However, one gift was a
19 chocolate candy cane wrapped in a box with a message that told the story of Jesus as
20 the Good Shepherd. (*Id*. ¶ 16.) I.M.'s sister believes this message was similar to the
21 Legend. (*Id*.)

22      On January 6, 2014, Advocates for Faith and Freedom ("AFF") filed a formal
23 complaint on behalf of I.M. with Merced and the West Covina School District
24 requesting that I.M. be permitted to distribute candy canes with the Legend. (Tyler
25 Decl. Ex. A.) Michael Seaman, the Assistant Superintendent of Human Resources for
26 the school district, investigated the complaint and determined that the school's
27 decision was made in an effort to remain religious neutrality. (*Id*. Ex. C.)

28

On March 7, 2014, AFF appealed Seaman's findings to the West Covina School Board. (*Id*. Ex. D.) On March 26, 2014, the school board determined that there was no violation of I.M.'s rights. (*Id*. Ex. E.)

In March 2014, the Superintendent issued a directive to all elementary school teachers clarifying permissible gift exchanges. (Pfitzer Decl. ¶ 11, Ex. 2.) The directive states that no gifts or messages of any kind will be distributed during class time, but students may exchange written materials before school, during recess, and after school.[3] (*Id*.) All students are permitted to hand out gifts once they are dismissed from class. (*Id*.) The directive applies to all students within the district and does not distinguish any particular viewpoints. (*Id*.)

Although I.M. is permitted to distribute candy canes with the Legend before school, during recess, and after school, there is no evidence that he has attempted to distribute the Legend at any of these times.

On April 14, 2014, AFF appealed the school board's decision to the California Department of Education and, as of the instant Motion, has not received a response. (*Id*. Ex. F, G.) On September 8, 2014, by and through his parents, I.M. filed the instant action, alleging violations of Free Speech and the Establishment Clause under the U.S. Constitution, Free Speech under the California Constitution, and The California Education Code § 48907(a). (Compl. ¶ 1.) Now a second grader, by and through his parents, I.M. seeks a preliminary injunction forcing the West Covina School District to allow him to distribute candy canes with the Legend at this year's class Christmas party. (Mot. 2.)

### III.   LEGAL STANDARD

A preliminary injunction is an extraordinary remedy. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A plaintiff seeking a preliminary injunction must establish that: (1) he is likely to succeed on the merits; (2) he is likely to suffer

---

[3] The Court **GRANTS** Defendants' Request for Judicial Notice in Support of Opposition to the instant Motion.

irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20; *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 979 (9th Cir. 2011). In each case, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987). Courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).

## IV. DISCUSSION

The Court finds that irreparable harm is not likely because I.M. is permitted to distribute candy canes with the Legend to his classmates before school, during recess, and after school.

Likelihood of irreparable injury is "the single most important prerequisite for the issuance of a preliminary injunction...[a]ccordingly, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered" *Freedom Holdings, Inc. v. Spitzer*, 408 F3d 112, 114 (2nd Cir. 2005.) "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief…[i]f unaccompanied by any continuing, present adverse effects." *City of Los Angeles v. Lyons* 461 US 95, 102 (1983) (internal quotes omitted). Thus, even if Plaintiff is likely to succeed on his First Amendment claim, he must still establish the likelihood of irreparable injury, the balance of equities, and that public interest tips in his favor before a preliminary injunction may issue. *DISH Network Corp. v. Fed. Commc'ns Comm'n*, 653 F3d 771, 776 (9th Cir. 2011).

Plaintiff is and has been permitted to distribute the Legend to his classmates at school. He is permitted to distribute the Legend before school, during recess, <u>and</u> after school. Plaintiff seeks preliminary intervention from the Court forcing the school to permit him to distribute the Legend in class at the class Christmas party.

Plaintiff argues that the irreparable harm is the school "requiring I.M. to distribute materials outside the classroom while allowing other students to distribute material inside the classroom." (Opp'n 1.) However, Plaintiff strategically ignores the 2014 directive that prevents the distribution of gifts or messages by *any* student during class time. Without acknowledging the 2014 directive, Plaintiff asserts that the district will treat I.M. differently from other students. Plaintiff then relies on this baseless assertion to establish "the single most important prerequisite for the issuance of a preliminary injunction." The Court finds this approach unpersuasive.

The Court is not tasked with determining the constitutionality of the district's decisions in 2013. The instant Motion seeking a preliminary injunction for the 2014 class Christmas party was filed after the March 2014 directive, which changed the district's policies regarding student distribution of messages in class. Plaintiff should have addressed the directive and provided some reasonable basis for the Court to conclude that the school would, as Plaintiff argues, require I.M to distribute the Legend outside class while allowing other students to distribute messages inside class. That the school permitted some students to hand out secular messages at the 2013 class Christmas party does not demonstrate that the school will do so in 2014. In light of the 2014 directive, the Court cannot assume, as Plaintiff has, that the school will require I.M. to distribute the Legend outside class while allowing other students to distribute message inside class.

As the moving party, Plaintiff had to establish that irreparable harm is likely before meeting the other requirements. *Freedom Holdings, Inc.*, 408 F3d at 114 (2nd Cir. 2005.) Plaintiff failed to establish that irreparable harm is likely. Therefore, the Court need not address Plaintiff's likelihood of success on the merits, whether the balance of equities tips in his favor, or whether a preliminary injunction is in the public interest.

/ / /

/ / /

## V. CONCLUSION

For the reasons discussed above, the Court **DENIES** Plaintiff's Motion for a Preliminary Injunction. (ECF No. 20.)

**IT IS SO ORDERED.**

December 11, 2014

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**